Approved: _____
           MARTIN S. BELL / CATHERINE E. GEDDES
           Assistant United States Attorneys

Before:    THE HONORABLE GABRIEL W. GORENSTEIN
           United States Magistrate Judge
           Southern District of New York

17 MAG 1051

------------------------------------X
                                    :    SEALED COMPLAINT
UNITED STATES OF AMERICA            :
                                    :    Violation of
    - v. -                          :    18 U.S.C. § 666
                                    :
MACHLI JOSEPH,                      :    COUNTY OF OFFENSE:
                                    :    NEW YORK
                    Defendant.      :
                                    :
------------------------------------X

SOUTHERN DISTRICT OF NEW YORK, ss.:

    BERNARDO STABILE, being duly sworn, deposes and says that he is a Special Agent with Department of Education, Office of the Inspector General ("DOE-OIG"), and charges as follows:

## COUNT ONE
### (Conversion and Misapplication Concerning Program Receiving Federal Funds)

    1.    From in or about 2010 through in or about 2016, in the Southern District of New York and elsewhere, MACHLI JOSEPH, the defendant, being an agent of an organization, to wit, Baruch College, said organization receiving benefits in excess of $10,000 of federal grants and financial aid each year between 2010 and 2016, embezzled, stole, obtained by fraud, and otherwise without authority knowingly converted to the use of a person other than the rightful owner, and intentionally misapplied, property worth at least $5,000 and owned by such organization, to wit, JOSEPH, without authorization from Baruch College, caused payments intended for Baruch College to be made to bank accounts he controlled, and used such funds for, among other things, personal expenses.

    (Title 18, United States Code, Section 666(a)(1)(A).)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

**OVERVIEW**

2. I am a Special Investigator for the Department of Education. I have been personally involved in the investigation of this matter, and I base this affidavit on that experience, on my conversations with other law enforcement officials, and on my examination of various reports and records. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

3. As set forth in more detail below, there is probable cause to believe that MACHLI JOSEPH, the defendant, has engaged in a scheme to embezzle funds that rightly belonged to Baruch College by, among other things, converting the use of some of its athletic facilities to his own financial benefit. Specifically, there is probable cause to believe that JOSEPH, while employed as an Assistant Athletic Director and Associate Athletic Director by the Baruch College Athletic Department, oversaw the rental of several of its gyms to various outside groups ostensibly for the financial benefit of Baruch College. However, rather than ensuring that Baruch College received payment for the use of its gyms, JOSEPH, without authorization from Baruch College, caused the payment for the rentals to be diverted to his own bank accounts, whereupon he made use of them for his own personal benefit. As part of this scheme, JOSEPH opened a bank account ostensibly associated with Baruch College but which in fact bore no connection to that institution. Instead, JOSEPH controlled the account and caused payments intended for Baruch College to be diverted to it, monies which he then took for himself. JOSEPH further directed that payment checks intended for Baruch College be made out to various entities and individuals other than Baruch College, many of which JOSEPH then deposited into bank accounts controlled by JOSEPH or his family members.

**BACKGROUND**

4. Baruch College (the "College") is a college of the City University of New York ("CUNY") located in New York, New York. I am aware, through publicly available information,

that at all times relevant to this complaint, both CUNY and the College received in excess of $10,000 per year in aid from the federal government.

5. Through my investigation, which has included searching publicly available sources and law enforcement databases, and reviewing documents from CUNY and other sources, I have learned the following about MACHLI JOSEPH, the defendant:

a. JOSEPH was employed at the College from approximately 2002 through 2016. Specifically, JOSEPH was employed by the College in 2002 as an athletic facilities director; from 2003 to 2011 as Assistant Athletic Director; and from 2011 to in or about August 2016 as Associate Athletic Director. He also acted as the College's men's basketball coach in 2002 and varsity women's basketball coach from 2004 to 2014. In or around August 2016, JOSEPH was named Associate Director of Facilities Management in the Office of Student Life, a position outside of the Athletic Department. In or around September 2016, JOSEPH resigned from the College.

b. JOSEPH's parents run a church based in New Jersey (the "CEA Church").

c. JOSEPH currently resides at a house in Elizabeth, New Jersey (the "Elizabeth Address") that is owned by the CEA Church. Until approximately August 2016, he resided at a house in Union, New Jersey (the "Union Address").

6. I have interviewed current and former members of the Baruch College administration. From these interviews, I have learned the following about JOSEPH's activities during his time working for the College:

a. At times when College gym facilities were not being used by College athletic teams, the facilities could be rented to outside parties. JOSEPH, in his roles as Assistant and Associate Athletic Director, had sole control over such gym rentals, and, along with an assistant whom JOSEPH had previously coached on the women's basketball team, was the only person who had access to the rental schedule and could schedule outside parties to use the gym.

b. Any and all funds obtained from the rental of College facilities were to be paid to the College.

c. JOSEPH was not authorized to open any bank account on behalf of the College or any College entity, nor was JOSEPH authorized to deposit checks on the College's behalf into bank accounts controlled by JOSEPH.

### The Defendant's Opening and Use of Baruch-Related Bank Accounts

7. Based on my review of records from an FDIC-insured bank for an account in the name "CEA Basketball," I have learned the following:

a. As of in or about 2011, MACHLI JOSEPH, the defendant, began using a bank account under the business name "CEA Basketball" (the "CEA Basketball Account"), which as of January 2011 had a $0 balance. JOSEPH is a signatory on the CEA Basketball Account, and the address for the CEA Basketball Account is the Union Address.[1]

b. Between approximately 2011 and 2016, over $216,000 in deposits were made into the CEA Basketball Account for activities that appear to be related to the College.

c. Between approximately 2011 and 2016, the majority of the deposits into the CEA Basketball Account came from checks issued by a corporate basketball association ("Entity-1")[2], totaling over $119,000. Most of the checks from Entity-1 indicate in the check's memo field that they are for, among other things, "Baruch B-ball," "Baruch College," "Baruch Fund," "Baruch Supervision," and "Baruch Gym." Checks from other entities similarly indicate they are for, among other things, "Basketball," "BAB," "Gym Rental," and "Gym Rental Baruch 2014." I understand "BAB" to stand for "Big Apple Basketball," another

---

[1] I have not reviewed complete account opening documents for the CEA Basketball Account. Deposit records for the CEA Basketball Account indicate that in or about 2011, JOSEPH became – if he was not already – a signatory, and the Union Address became – if it was not already – the address of record. Since 2011, no other individuals have made deposits into or withdrawals from the CEA Basketball Account.

[2] Entity-1 runs athletic leagues, most notably basketball leagues, in which law firms, corporations and other entities participate for a fee. Among other things, Entity-1 arranges for available playing surfaces, officiating, and the necessary insurance.

4

corporate basketball association that rented gym space from the College. My review of bank records indicates that Big Apple Basketball has also written substantial checks to JOSEPH.

   d. Between approximately 2011 and 2016, over $134,000 in withdrawals were made from the CEA Basketball Account. Among other withdrawals, funds were withdrawn from the CEA Basketball Account for the following:

      i. Checks issued to Big Apple Basketball for such things as "NCAA Pool," "Basketball Training," and "Workouts."

      ii. Checks made out to various entities for such things as "housekeeping," "storage space," "roofing," "birthday event" (which appears to have been for Machli's wife based on the name associated with the event), "dry cleaning," "books" for a relative of JOSEPH, "Machli portrait photos," daycare, landscaping, and to "Kindercare" in the name of JOSEPH's daughter.

      iii. Checks issued to College basketball players or individuals otherwise associated with the College basketball team.

      iv. Checks made out to "Machli Joseph" for credit card payments and deposits into other accounts.

      v. Funds used to pay JOSEPH's mortgage at the Union Address.

      vi. Funds transferred to other bank accounts controlled by JOSEPH.

      vii. Funds used to pay bills for utility expenses, department stores, and credit cards issued in JOSEPH's name.

   8. Based on discussions I have had with some of the individuals and organizations that issued checks deposited into the CEA Basketball Account, I have learned that the checks were intended to pay for, among other things, College facility rentals, and were not intended for the personal use of MACHLI JOSEPH, the defendant.

   9. Based on my review of records from an FDIC-insured bank for an account in the name "Baruch Basketball," I have learned the following:

5

a. MACHLI JOSEPH, the defendant, opened a bank account under the business name "Baruch Basketball" in or about November 2015 (the "Baruch Basketball Account") with an opening deposit of $50. JOSEPH is the only signatory on the Baruch Basketball Account, and provided the Union Address as the address for "Baruch Basketball" and as the mailing address for bank statements from the Baruch Basketball Account. The business account application for the Baruch Basketball Account lists JOSEPH as the "sole owner" and lists the business type as "Baruch Basketball" as "sole proprietor." The application indicates annual gross sales for "Baruch Basketball" of $134,000. The banker who is listed in bank records as having opened the account for JOSEPH is an individual whom I believe, based on email records and my involvement in this case, to be a cousin of JOSEPH.

b. In what appears to have been an effort to verify the legitimacy of the "Baruch Basketball" entity, JOSEPH provided the bank with a printout showing a February 1972 NYS Department of State Division of Corporations filing for an entity called "Baruch College Faculty Club, Inc."

c. Between approximately November 2015 and June 2016, over $95,000 in deposits were made into the Baruch Basketball Account for activities that appear to be related to the College.

d. Checks deposited into the Baruch Basketball Account were made out to either "Baruch College" or "Baruch Basketball." The memo fields of various checks indicate the deposits were for, among other things, "Pool Rental December 2015," "Athletics Dep," "Gym Rental," and tournaments.

e. Withdrawals from the Baruch Basketball Account include a $15,000 check made out to an individual who, in or about 2015 through 2016, assisted JOSEPH in responding to an investigation by the National Collegiate Athletic Association ("NCAA") relating to improper payments allegedly made by JOSEPH to players. Withdrawals from the Baruch Basketball Account also include transfers to other bank accounts controlled by JOSEPH and to pay credit cards issued to JOSEPH, including credit card payments related to remodeling the Elizabeth Address.

10. Based on discussions I have had with some of the individuals and representatives of organizations that issued checks deposited into the Baruch Basketball Account, I have

learned that the checks were intended to pay for, among other things, College facility rentals, and were not intended for the personal use of MACHLI JOSEPH, the defendant. I have further learned that at least some of the checks made out to "Baruch College" were intended to be deposited into the College's bank account, not an account controlled by JOSEPH.

      11. Through my investigation and discussions with members of the College administration, I have learned that "Baruch Basketball" and "CEA Basketball" are not entities affiliated with the College. I have also learned that "Baruch College Faculty Club, Inc." is not known to be an active entity associated with the College at any point relevant to this complaint.

      12. From speaking with the president of Entity-1 ("Individual-1"),[3] I have learned the following:

      a. Individual-1 has been renting gym space on behalf of Entity-1 since the early 2000s. Until approximately 2008 or 2009, Individual-1 wrote checks to pay for gym rentals to "Baruch College." In or about 2008 or 2009, MACHLI JOSEPH, the defendant, directed Individual-1 to begin writing the checks to entities other than "Baruch College." For example, JOSEPH directed Individual-1 to write checks for the gym rental to, among others, "Baruch Basketball," "CEA Basketball," JOSEPH, JOSEPH's wife, and other individuals.

      b. In approximately 2012 or 2013, JOSEPH directed Individual-1 to mail the checks to the Union Address – JOSEPH's home address at the time – instead of mailing the payments to the College.

      c. Although Individual-1 questioned JOSEPH as to why the checks should be made out to various individuals, JOSEPH informed Individual-1, in sum and substance, that this was the way it had to be done and if Individual-1 would not comply with it, JOSEPH would rent the space to another entity.

      d. All of the money paid by Individual-1 to JOSEPH was intended for College gym rentals or related fees, and was not intended for JOSEPH's personal use.

---

[3] The Government expects to enter into a non-prosecution agreement with Individual-1 in connection with this case.

13. In total, Individual-1 wrote a total of more than $280,000 in checks on behalf of Entity-1 that were deposited into bank accounts controlled by JOSEPH or JOSEPH's wife.

14. Based on my review of additional records from FDIC-insured banks, MACHLI JOSEPH, the defendant, deposited funds for activities that appear to be related to the College in at least five additional bank accounts (in addition to the CEA Basketball Account and Baruch Basketball Account) controlled by JOSEPH or his wife. The total amount of funds deposited into accounts controlled by JOSEPH or his wife for activities that appear to be related to the College is over $590,000.

15. From my review of electronic documents obtained pursuant to a judicially-authorized search warrant, including emails, notes, and calendar entries relating to an email account belonging to MACHLI JOSEPH, the defendant, I have learned that JOSEPH kept records of some of the funds he was receiving from entities such as Entity-1 to pay for College gym rentals, and recorded certain of the personal expenses he would use such funds for.

    a. For example, in or about October 2014, Entity-1 gave three checks to JOSEPH for College gym rentals, made out to JOSEPH's wife ($2,000), "CEA Basketball" ($2,000), and "Machli Joseph" ($1,600).

        i. In an electronic note to himself memorializing these three "Corp league checks (Oct)," JOSEPH indicated that the money directed to his wife would be used to pay for his wife's credit card ($500) and "children's place" ($500), and $1,000 would go "towards savings" - a total of $2,000.

        ii. JOSEPH further indicated in his note that the money directed to CEA would be used to pay $500 "towards Chase/United cards" and $500 "towards affinity cc" - a total of $1,000.

        iii. JOSEPH further noted to himself that the money directed to "MJ," which I believe to be a reference to JOSEPH, would be used to pay his "gold card" ($300), keep $300 for "cash at home," and contribute $1,000 to savings - a total of $1,600.

    b. By way of another example, in or about April 2015, Entity-1 gave three checks to JOSEPH for College gym

rentals, made out to "Machli Joseph" ($1,500), "CEA Basketball" ($2,000), and JOSEPH's wife ($2,000).

   i. In an electronic note to himself memorializing these three "Corp league checks (April)," JOSEPH indicated that of the "$1500 to MJ" (an apparent reference to the $1,500 check to "Machli Joseph"), $1,000 would go to savings and $500 would go to his "gold card" – a total of $1,500.

   ii. JOSEPH noted that $2,000 would go to "CEA basketball" but did not specify any further use for those funds.

   iii. JOSEPH further indicated in the note that the money directed to his wife would be used to pay a "bofa CC" ($1,000) and an "AA credit card" ($500), and $500 would be kept for savings – a total of $2,000.

  c. JOSEPH further memorialized in notes to himself that he would apply funds received from "corp league checks" to, among other things, "FL vacation," "us airways cc," "pay calypso cay maintenance," and "cash on hand for home improvement."

  WHEREFORE, deponent respectfully requests that a warrant be issued for the arrest of MACHLI JOSEPH, the defendant, and that he be arrested and imprisoned or bailed, as the case may be.

          _____
          BERNARDO STABILE
          Special Investigator
          Office of the Inspector General –
          Department of Education

Sworn to before me this
13th day of February, 2017

_____
THE HONORABLE GABRIEL W. GORENSTEIN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK